**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                      Chapter 11
                                                            Lead Case No. 23-11086(JPM)
SOHA HOUSE LLC, ET AL.,[1]


                            Debtors.
------------------------------------------------------------X

## <u>DISCLOSURE STATEMENT</u>

Soha House LLC, Soteria Real Property LLC, 536 West 150 Street LLC and WCJ Fund LLC (collectively, the "Debtors") submit this Disclosure Statement pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ et seq. (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in connection with the Debtors' Plan of Reorganization dated October 12, 2023 (the "Plan") to all known holders of Claims against or Interests in the Debtors in order to adequately disclose information deemed to be material, important and necessary for the Debtors' creditors to make a reasonably informed judgment about

---

[1] *Jointly administered with Soteria Real Property LLC (23-11087), 536 West 150 Street LLC (23-11088) and WCJ Fund LLC (23-11089).*

1

the Plan. A copy of the Plan is attached hereto as Exhibit "A."

[The Bankruptcy Court has approved this Disclosure Statement in this chapter 11 case under Section 1125(b) of the Bankruptcy Code and has scheduled a hearing on confirmation of the  Plan for December __, 2023 at 10:00 a.m. (the "Hearing")]. Under Section 1126(b) of the Bankruptcy Code, only Classes[1] of Allowed Claims that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered or reduced under the Plan. Under the Plan, only Class 1 and Class 2 are unimpaired and are entitled to vote on the Plan.

**NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.  THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORTS HAVE BEEN MADE TO BE ACCURATE.  HOWEVER, NOTHING CONTAINED HEREIN SHALL OR SHALL BE DEEMED TO BE AN ADMISSION OR A DECLARATION AGAINST INTEREST BY THE DEBTORS AND FOR PURPOSES OF ANY FUTURE LITIGATION.  TO THE EXTENT THAT CERTAIN DOCUMENTS ARE SUMMARIZED WITHIN THIS DISCLOSURE STATEMENT OR THE PLAN, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH**

2

**DOCUMENTS.**

# I. INTRODUCTION

### A. Background

Each one of the Debtors is a limited liability company organized under the laws of the State of New York except for Soha House LLC which is organized under the laws of the State of Delaware.

The Debtors combined currently own 100% of the membership interests in Midtown West 47 ST LLC ("Midtown"), a non-debtor entity that owns the Property.

In or around March 2018, Midtown purchased the Property for approximately $6,000,000.00. Then, in December 2019, Midtown refinanced its first mortgage on the Property with 5 Arch Funding Corp. ("5 Arch"). The refinance with 5 Arch was intended to allow the Debtors to pay off their initial closing loan and provide construction financing for a redevelopment of the Property into a luxury condominium building.

The Debtors eventually began to initiate the redevelopment project for the Property in 2020, but were met with continuous roadblocks by the community board, the City Planning Board and ensuing complications caused by the Covid-19 Pandemic.

In or around October and November of 2022, the Debtors submitted their revised redevelopment plans to the City Planning Board and the community board, who each forthwith approved construction.

Unfortunately, during this interim period, 5 Arch assigned its mortgage to CAF Bridge Borrower MS LLC ("CAF"), who immediately attempted to foreclose on the Debtors' interests in Midtown due to their secured guaranty of Midtown's defaulted loan. CAF is owed approximately $4,500,000.

3

The redevelopment project for the Property is only 5% complete. The Property is currently in the demolition phase, with every floor gutted and vacant. The Property has forced place insurance, and its premiums are paid by 5 Arch and now, assumingly, CAF.

With the Property now ready for redevelopment, the Debtors had been actively pursuing takeout and construction financing, but CAF ultimately scheduled a UCC sale of the Debtors' membership interests in Midtown for July 11, 2023 at 2:30 PM. This in turn led to the Debtors for filing for Chapter 11 protection on the Petition Date prior to the scheduled sale time.

According to a 2022 appraisal, the Property, in "as is" condition, is worth $8,650,000.

**Efforts to Refinance or Sell the Property**

During the Chapter 11 Case, the Debtors have been seeking out various sources of capital as well as talking to potential brokers and purchasers to either refinance or sell the Property. Subject to the time deadlines set forth in the Plan, the Debtors shall market the Property immediately, and the Debtors have agreed to retain Northpoint Realty Group, a well-known and experienced licensed real estate broker in the bankruptcy and insolvency industry, subject to Court approval, to refinance or sell and liquidate the Property for the highest and best price on or before February 9, 2024. Upon closing, the proceeds of refinance or sale shall be distributed to holders of Claims and Interests in the same manner as provided for in the Amended Plan.

## II.
## THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INTELLIGENT JUDGMENT CONCERNING IT. THE PLAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

4

The Plan will be funded with the net proceeds from the sale or refinance of the Property.

**A.    Treatment of Unclassified Claims Under the Plan**

1.    <u>Allowed Administrative Claims other than Claims of Professionals</u>: The Debtor does not anticipate any Allowed Administrative Claims other than those of the Debtor's Professionals at Confirmation. However, to the extent that any such Claims should exist, they shall be paid in the ordinary course and according to the terms and conditions of the respective contracts underlying such Claims.

2.    <u>Allowed Administrative Claims of Professionals</u>: Allowed Administrative Claims of Professionals shall be paid, in full, in Cash, upon the later of (i) allowance by the Court pursuant to Section 330 of the Bankruptcy Code or (ii) the Effective Date, unless otherwise agreed to by such professionals. The only Allowed Administrative Claims are those of (i) Debtor's current counsel, Davidoff Hutcher & Citron LLP in the approximate net unpaid estimated amount, as of the Confirmation Date, of $50,000; and (ii) Northpoint Realty Group in the approximate amounts of (a) a commission equal to 3.25% (or 4% in the event of a co-broke) which will be paid directly to Northpoint at closing without further order of the Court, by the successful purchaser, or (b) a fee of 3% of the Credit Bid, should CAF choose to exercise its rights under section 363(k) of the Bankruptcy Code.

3.    <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 prior to Confirmation shall be payable by the Effective Date. Thereafter, such fees shall be paid in full, in Cash, in such amount as incurred under the Plan and/or in the ordinary course of business by the Debtors. The Debtors shall effectuate payment of United States Trustee quarterly fees through the entry of a final decree closing the

5

Chapter 11 Cases.

**B.    Treatment of Classes**

Class 1 – The CAF Secured Claim The CAF Class 1 Secured Claim, together with accrued interest on the unpaid principal amount under the CAF loan documents at a rate of interest rate to be determined by the Bankruptcy Court thereon from the Petition Date, shall be paid up to 100% of its Allowed Claim based on the results of the Sale/Auction, in Cash, from the Distribution Fund upon the earlier of a post-Effective Date refinance of the Property or the Sale/Auction Closing Date, provided that in the event of a refinance, CAF will be paid 100% of its Allowed Claim. Class 1 is impaired and entitled to vote on the Plan.

Class 2 – Allowed General Unsecured Claims. Holders of Allowed Class 2 General Unsecured Claims shall be paid, after the payment in full of all Administrative, unclassified and Class 1 Claims in full, up to 100% of its Allowed Claim based on the results of the Sale/Auction, in Cash, from the Distribution Fund upon the earlier of a post-Effective Date refinance or the Sale/Auction Closing Date, provided that in the event of a refinance, Allowed Class 2 Claims will receive 100%.. Class 2 is impaired and entitled to vote on the Plan.

Class 3- Interests. The holders of Class 3 interests shall continue to retain their interests in the Debtors after the Effective Date and shall receive any net proceeds after payment in full to all Allowed classified and unclassified Claims. Class 3 interests are unimpaired under the Plan and are deemed to accept the Plan.

**C.    Means For Implementation**

(1)    Subject to the time deadlines set forth in this Article IV, the Debtor shall continue through a licensed real estate broker, to market the Property in order to refinance or sell and liquidate the Property for the highest and best price on or before February 8, 2024. Upon Closing,

the proceeds of refinance or sale shall be distributed to holders of Claims and Interests in the same manner as provided for in Article III herein.

(2)    In the event that the Debtor has not previously refinanced the Property or sold by a private sale, Debtor shall conduct a public auction of the Property on or before February 9, 2024.

(3)    Any sale of the Interests, whether pursuant to a Sale Contract or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4), 1129 and 1146(a) of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing.

(4)    At an auction conducted pursuant to subsection 4.2 of the Plan or otherwise, CAF shall be entitled to and have the absolute right to Credit Bid, in an amount to be determined by the Bankruptcy Court, as to the Property.

Auction of the Property/Interests. In the event that the Debtors have not previously refinanced the Property and/or Interests or sold by a private sale, Debtors shall conduct a public auction of the Property and/or Interests on or before February 9, 2024.

Any sale of the Interests, whether pursuant to a Sale Contract or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing.

7

At an auction conducted pursuant to subsection 4.2(b)(1) of the Plan or otherwise, CAF shall be entitled to and have the absolute right to Credit Bid.

At an auction:

(i)      If CAF is the highest bidder, no deposit shall be required and its Credit Bid Amount shall be applied to the payment of the purchase price *except that CAF* shall also be responsible to pay, at Closing, 3% of the Credit Bid Amount to the Debtors' real estate broker, and shall also assume the obligation to pay all real estate taxes and any other outstanding liens on the Property.

(ii)      If CAF is not the highest bidder, immediately following the auction, the Third-Party Highest Bidder shall execute the Sale Contract which shall provide, among other things, that: (i) a Closing of the sale will occur on or, at the option of the successful bidder, before the 45th day after the date of the auction; (ii) that time is of the essence with respect to the Closing date, and (iii) the purchaser shall pay in addition to the auction sale price, the buyer's or bidder's premium..

(iii)      If the Third-Party Highest Bidder defaults under the Sale Contract, the Disbursing Agent will be entitled to keep the deposit for distribution under the Plan, and the Debtors shall reserve the second highest bidder. If  CAF does not purchase the Property and./or Interests at the auction and the Third-Party Highest Bidder is unable to close on the Closing date, the Disbursing Agent shall contact the second highest bidder and enter into a Sale Contract of the amount of such bid; provided however, that the Sale Contract with the second highest bidder shall comply with the provisions of the Plan, which sale must Close within twenty-five (25) days after execution of such contract.

8

**D.**      **Resolution Of Disputed Claims & Reserves**

(a)      <u>Objections</u>. An objection to the allowance of a Claim shall be in writing and may

be filed with the Bankruptcy Court by the Debtor or any other party in interest no later than the

Confirmation Date.

(b)      <u>Amendment of Claims</u>. A Claim may be amended after the Effective Date only as

agreed upon by the Debtors and the holder of such Claim and as approved by the Bankruptcy

Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

(c)      <u>Reserve for Disputed Claims</u>. The Debtors shall reserve, on account of each holder

of a Disputed Claim, that property which would otherwise be distributable to the holder on such

date were the Disputed Claim at issue an Allowed Claim at the time of distribution, or such other

property as the holder of the Disputed Claim at issue and the Debtors may agree upon. The property

so reserved for the holder, to the extent that the Disputed Claim is Allowed, and only after the

Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such

holder as provided below.

(d)      <u>Distributions to Holders of Subsequently Allowed Claims</u>. Unless another date is

agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtors

shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order,

distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash,

from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from

any other source of cash otherwise available to the Debtors, equal to that amount of cash which

would have been distributed to such holder from the Effective Date through such distribution date

had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date. The

9

holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

(e)    <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any dispute between and among holders of Claims and/ or Interests (including the individual or entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Debtors may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account or to a distribution reserve as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Debtors shall make timely distributions on account of the undisputed portion of a Claim or Interest to such claimants.

(f)    <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which were previously disputed may subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

**E.    Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtors reserve the right, in accordance with the Section 1127 of the Bankruptcy Code, to amend or modify the Plan with such Order of the Bankruptcy Court, as may be required.

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or

against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or

any other person in any further proceedings involving the Debtor.

**F.    Unclaimed Property**

Except as otherwise provided herein, in the event any claimant fails to claim any

distribution within 120 days from the date of such distribution, such claimant shall forfeit all rights

thereto and to any and all future payments, and thereafter the Claim for which such cash was

distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall

be sent to their last known address set forth on the most recent proof of claim filed with the

Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such

other address as may be later designated by a creditor in writing. The Disbursing Agent and the

Debtors shall use their collective best efforts to obtain current addresses for all claimants. The

Disbursing Agent shall notify the Debtors of all returned distributions. All unclaimed Cash shall

be redistributed by the Disbursing Agent pro rata to equity.

**G.    Plan Injunction**

*Effective on the Confirmation Date, all persons who have held, hold or may hold Claims*

*or Interests are enjoined from taking any of the following actions against or affecting the Debtors*

*or assets of the Debtors with respect to such Claims, Interests or Administrative Claims, except*

*as otherwise set forth in the Plan, and other than actions brought to enforce any rights or*

*obligations under the Plan or appeals, if any, from the Confirmation Order:*

*(i) Commencing, conducting or continuing in any manner, directly or indirectly, any*

*suit, action, arbitration, or other proceeding of any kind against the Debtors or the assets of the*

*Debtors regarding the Claims or Interests;*

11

*(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the assets of the Debtors;*

*(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtors;*

*(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtors or the assets of the Debtors; and*

*(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.*

*H.    Exculpation. Neither the Debtors nor any of their members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Cases or the Plan except with respect to their obligations under the Plan and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 7.2 or 7.3 of the Plan shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code,*

*the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 7.2 or 7.3 of the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in Section 7.2 of the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, (b) effect a release of any claim of CAF arising out of or under any guarantees executed in connection with the CAF Secured Claim or any environmental law, or (c) limit the liability of the Debtors' professionals to the Debtors pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

**I.      Full and Final Satisfaction**

Pursuant to the Plan, all payments and all distributions shall be in full and final satisfaction, settlement and release of all Claims and Interests, except as otherwise provided in the Plan.

**J.      Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases:

(a)  To determine all controversies relating to or concerning the allowance of and/ or distribution on account of such Claims or Interests upon objection thereto which may be filed by any party in interest;

13

(b)  To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)  To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims and all disputed Interests;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)  To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan;

(h)  To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases;

(i)  To resolve any disputes which may arise concerning the sale or auction of the Property or satisfaction of the Allowed Secured Claims as required under the Plan;

(j)  To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the

14

Bankruptcy Code;

(k)    If necessary, to implement any post-Effective Date sale of the Interests, including any issues and dispute arising therefrom; and

(l)  To enter a final decree closing the Chapter 11 Cases.

**K.    Post-Confirmation Fees, Final Decree**

The reasonable compensation and out-of-pocket expenses incurred post-Confirmation professional fees shall be paid by the Debtors within ten (10) days upon presentation of invoices for such post-petition professional services. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

**L.    Continuation of Bankruptcy Stays**

All stays provided for in the Chapter 11 Cases under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**M.    Avoidance and Recovery Actions**

The Debtors believe, after a thorough investigation and review with their counsel, that there are no causes of action under Sections 544, 547, 548, 550 and 553 of the Bankruptcy Code. As such, the Debtors do not intend to pursue any such causes of action.

### III.    FINANCIAL INFORMATION

**A.  The Debtors' Schedules of Assets and Liabilities**. Schedule of the Debtors' assets and

15

liabilities have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B. Chapter 7 Liquidation Analysis.** Because the Plan contemplates a refinance or liquidation of the Property, no interest would be served by administering the estates under Chapter 7, which would simply add another layer of administrative expenses, thereby eroding any potential recovery to creditors. Accordingly, the Plan provides a better result to creditors than a liquidation under Chapter 7; nor could a Chapter 7 possibly result in a greater distribution that that proposed under the Plan.

## IV. CONFIRMATION PROCEDURE

**A.      Voting.** As set forth hereinabove and in the Plan, Classes 1 and 2 are impaired and entitled to vote on the Plan. Class 3 Interests are unimpaired; therefore, their votes will not be solicited.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

**B.      Confirmation Hearing.** The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan. The Confirmation hearing has been scheduled for the date set forth on the Court Order which accompanies this Disclosure Statement. The Confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation hearing. At the Confirmation hearing, the Bankruptcy Court will (i) hear and determine any objections to the Plan and to Confirmation of the Plan; (ii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iii) confirm or refuse to confirm the Plan.

### C.    Statutory Requirements for Confirmation of the Plan

At the confirmation hearing, the Debtors will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If so, the Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)    The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)    The Debtors must have complied with the applicable provisions of the Bankruptcy Code;

(c)    The Plan has been proposed in good faith and not by any means forbidden by law;

(d)    Any payment made or promised to be made by the Debtors under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)    The Debtors have disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy. Until completion of all payments to creditors as required under the Plan, there shall be no post-Confirmation compensation by the Debtors to the Debtors' existing management.

17

(f)    <u>Feasibility and "Best Interest" Tests</u>: The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtors will possess the resources to meet its obligations under the Plan. Since the Plan contemplates a refinance and/or liquidation of the Debtors' assets, Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtors under the Plan. Until such time as the Plan is fully funded, the Debtors shall have ample reserves to ensure that there is sufficient cash on hand to satisfy the basic and critical expenses of the Debtors.

In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interests Test"). The Best Interests Test with respect to each impaired Class requires that each holder of a Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, which is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the BankruptcyCode. Because all creditors are unimpaired, no scenario exists, including but not limited to Chapter 7 liquidation, under which the creditors would be entitled to receive a distribution greater than that which the Debtor has proposed in the Plan.

In order to ensure feasibility of the Plan, the Debtors' principals have committed to

maintaining, upkeeping, preserving and insuring the Property pending the Plan effectuation and sale process described therein.

The Plan therefore satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

**D.    Risk Factors; Alternatives to Plan**

Creditors should understand that there is a risk the Plan could not be confirmed by the Bankruptcy Court. In the event the Plan is not confirmed, the alternatives would include:

(i) Conversion to Chapter 7 Liquidation. Conversion would result is a forced liquidation of the Debtor's business and assets. In accordance with the liquidation analysis herein, the Debtor's Unsecured Creditors would receive a substantially lesser distribution that what is being provided under the Plan.

(ii) Alternative Plan. An alternative plan proposed by a party other than the Debtor would not contain any better of a distribution to unsecured creditors or as swift and equitable of the resolution of CAF's Claim.

**E.    Objections to Confirmation.** Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court and served upon the following, with a copy to the Court's chambers, so that it is received by them on or before 4:00 P.M. on the date set forth in the Court Order which accompanies this Disclosure Statement:

Davidoff Hutcher & Citron LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

Objections to confirmation of the Amended Plan are governed by Federal Rule of

Bankruptcy Procedure 9014.

## V.    ALTERNATIVES TO CONFIRMATION
## AND CONSUMMATION OF THE AMENDED PLAN

If the Plan is not confirmed and consummated, the alternatives include: (i) preparation and

presentation of an alternative plan of reorganization; (ii) liquidation of the Debtors under Chapter

7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 Cases, which would result in all

creditor claims and rights of collection and enforcement being restored in full.

## VI.  POST-CONFIRMATION REPORTS

The Debtors shall be responsible for filing post-Confirmation reports with the Bankruptcy

Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and 31 U.S.C. §3717, on

behalf of the Debtor, until the earlier of (a) conversion or dismissal of the Chapter 11 Cases or (b)

entry of a final decree closing the Chapter 11 Cases.

## VII.    TAX CONSEQUENCES

A.       **Tax Consequences of Confirmation.** Confirmation may have federal income tax

consequences for the Debtors and holders of Claims and Interests. The Debtor has not obtained and

does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the

20

Debtors obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. The Debtors, creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state, and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state, and local tax consequences of the Plan, including but not limited to the receipt of Cash under the Plan.

        **B.      Tax Consequences to the Debtors.** The Debtors may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

## VIII.    NOTICES

All notices and correspondence should be forwarded in writing to:

DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
Attn: Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

## IX.    RECOMMENDATION

The Debtors believes that Confirmation of the Plan is preferable to any of the alternatives

described above. The Plan will provide greater recoveries than those available in liquidation to all

holders of Claims. Any other alternative would cause significant delay and uncertainty, as well as

substantial additional administrative costs.

Dated: New York, New York
        October 12, 2023

SOHA HOUSE LLC
SOTERIA REAL PROPERTY LLC
536 WEST 150 STREET LLC AND
WCJ FUND LLC

By: */s/ Fang Zou*
      Fang Zou, Manager

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200

By: */s/ Jonathan S. Pasternak*
      Jonathan S. Pasternak